UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERRY HOWARD VAUGHN, | 1:15-cv-01247-GSA |
| Plaintiff, | |
| v. | **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1] | |
| Defendant. | |

**I.   INTRODUCTION**

Plaintiff Perry Howard Vaughn ("Plaintiff") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for Disability Insurance Benefits ("DIB") benefits pursuant to Title II of the Social Security Act. (Docs. 1 and 14). The Commissioner filed an opposition and a cross-motion for summary judgment. (Doc. 17). Plaintiff filed a reply. (Doc.20). The matter is currently before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.   After reviewing the administrative record and the pleadings, the

---

[1] Pursuant to Fed. R. Civ. Pro. 25(d), Nancy A. Berryhill shall be substituted in for Carolyn W. Colvin, as Nancy A. Berryhill is now the acting Commissioner of Social Security.

1

Court finds the ALJ's decision is not supported by substantial evidence, grants Plaintiff's appeal in part, and denies the Defendant's cross-motion for summary judgment. The case is remanded for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## II.   BACKGROUND AND PRIOR PROCEEDINGS[2]

Plaintiff filed an application for DIB on May 1, 2012, alleging a disability beginning April 18, 2012. AR 12; 146-152. His application was denied initially on August 16, 2012, and on reconsideration on March 4, 2013. AR 12; 95-99; 102-104; 146-152. Plaintiff requested a hearing before an administrative law judge ("ALJ"). AR 8. ALJ G. Ross Wheatley conducted a hearing on September 30, 2013 (AR 27-70), and published an unfavorable decision on November 4, 2013. AR 12-21. Plaintiff filed an appeal on May 16, 2014. AR 7-11. The Appeals Council denied the request for review on November 20, 2015, rendering the order the final decision of the Commissioner. AR 1-6.

## III.   ISSUES FOR JUDICIAL REVIEW

Plaintiff filed for disability due to degenerative disc disease in his lumbar spine, a cardiac impairment including shortness of breath, sleep apnea, obesity, and degenerative joint disease in his bilateral feet, knees, sacroiliac joints, and right elbow. AR 174. He alleges that the ALJ improperly assessed the evidence when reviewing his case. Specifically, he argues that: (1) the ALJ failed to give specific and legitimate reasons for rejecting the opinions of Plaintiff's treating orthopaedist and cardiologist, as well as a chiropractor who performed a consultative exam. Instead, the ALJ improperly relied on two non-examining physicians' opinions when formulating the residual functional capacity ("RFC");[3] (2) the ALJ erred in finding that Plaintiff's cardiac impairment was nonsevere; (3) the ALJ did not provide clear and convincing reasons for finding Plaintiff not credible; and (4) the ALJ improperly rejected Plaintiff's wife's testimony. (Doc. 14, pgs. 16-29; Doc. 20, pgs. 1-5). Based on these errors, Plaintiff requests that the case be remanded

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

[3] A residual functional capacity captures what a claimant "can still do despite [his or her] limitations." 20 C.F.R. § 404.1545. "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

for an award of benefits, or alternatively, that the case be remanded for further proceedings. (Doc. 14, 29-30; Doc. 20, pg. 5). The Commissioner opposes each of these arguments and contends that the ALJ's evaluation of the medical evidence and his credibility determinations were proper and are supported by substantial evidence. (Doc. 17, pgs. 6-16).

### IV.     THE MEDICAL RECORD

On July 9, 2011, chiropractor Douglas W. Roberts, D.C., performed an independent medical assessment to evaluate pain in Plaintiff's lower back, hips and neck. AR 270. Plaintiff informed Dr. Roberts he had experienced these symptoms for many years but they had worsened. AR 271. Dr. Roberts observed that Plaintiff was in distress and weighed 285 pounds.  A Minor's sign test was performed and was indicative of sciatica, and his gait was antalgic, favoring the right side. AR  272. Dr. Roberts' examination revealed severely limited flexion and extension in Plaintiff's lumbar spine and positive straight-leg raises. AR 272-274. There was significant loss of strength in both hands and all results of cervical testing were positive. AR 273. Dr. Roberts' examination also revealed severe pain to palpation and hypertonicity (excessive muscle tone or tension) throughout Plaintiff's paraspinal muscles and active tender points throughout Plaintiff's scapular muscles, his trapezius, rhomboid and gluteal muscle groups. AR 275. Dr. Roberts determined Plaintiff's present condition was caused by his excess weight and years of injuries.  He diagnosed chronic lumosacral sprain/strain, chronic lumbar sprain/strain and degeneration of the lumbar or lumbosacral disc. AR 271, 275. He opined Plaintiff would experience episodes of pain and weakness and was unable to perform any work duties that would lead to gainful employment. AR 275.

On July 26, 2011, Plaintiff was examined by Mark Cook, M.D., his primary care physician, who detected an irregular heartbeat. AR 379. Dr. Cook ordered x-rays of Plaintiff's right elbow which revealed marked degenerative changes involving the elbow joint with osteophyte formation along the olecranon and coronoid process and multiple small bone fragments that suggested the possibility of loose bodies in the joint capsule.  Joint spaces appeared to be fairly well maintained. AR  377.  X-rays of Plaintiff's knees revealed osteoarthritic changes and narrowing joint spaces with osteophyte formations (bony growths) in both knees and chondrocalcinosis (calcification of

cartilage) in his right knee. AR 375. Dr. Cook referred Plaintiff to an orthopaedist. AR 331.

On August 29, 2011, Plaintiff presented to Robert M. Cash, M.D., an orthpaedist, for an evaluation of his bilateral knees and right elbow. AR 278. Dr. Cash reviewed Plaintiff's x-rays and his examination revealed crepitus (grinding or crackling in the joint) and pain with motion in both knees with the left worse than right, and crepitus in Plaintiff's right elbow. AR 278. Dr. Cash diagnosed bilateral knee arthrosis and right elbow arthosis with loose bodies and injected corticosteroids and lidocaine in Plaintiff's left knee. AR 279. Dr. Cash indicated Plaintiff may be a candidate for hyaluronic acid injections in his knee and was a candidate for right elbow arthroscopy with removal of loose bodies. AR 279.

On November 11, 2011, Plaintiff reported to Jeffrey Mark, M.D., his gastroenterologist, that his mobility and weight-loss goals had been affected by his left knee. AR 388. Dr. Mark observed slightly increased tone at Plaintiff's anastomotic site, and noted he had a hiatal hernia. AR 388.

Dr. Cook referred Plaintiff to a cardiologist and was seen by Charles C. Tsai, M.D., on December 3, 2011. AR 309-311. Dr. Tsai could hear an irregular rate and rhythm with normal S1 and S2. He diagnosed atrial fibrillation but indicated Plaintiff was stable at that time. AR 311-312. Dr. Tsai also noted that Plaintiff had a history of duodenal ulcer with perforation. AR 309; 311.

On April 23, 2012, Plaintiff returned to Dr. Tsai for a follow-up of his atrial fibrillation, at which time Dr. Tsai recommended Plaintiff undergo a transthoracic echo with doppler. AR 304. Dr. Tsai reported Plaintiff had gradually and steadily been regaining the weight he lost after his bariatric surgery and currently weighed 295 pounds. AR 302. Dr. Tsai noted that Plaintiff wanted to quit work and apply for disability so that he could stay at home with his eight year old adopted daughter. AR 302.

On April 24, 2012, Plaintiff complained to Dr. Cook about persistent severe mid to low back pain, fatigue, weight gain, arthritis pain, history of gastric bypass surgery, and sleep apnea. AR 327. Dr. Cook advised Plaintiff to heat and ice the affected areas. AR 328. Dr. Cook ordered a repeat CPAP (Continuous Positive Airway Pressure) titration recommended by Plaintiff's

cardiologist, which revealed moderately severe sleep disordered breathing and atrial fibrillation with considerable variation in ventricular rate. AR 327; 335. A trial of CPAP at ten centimeter water pressure was recommended. AR 335.

The transthoracic echo with doppler recommended by Dr. Tsai was performed on May 4, 2012. The results revealed concentric hypertrophy in Plaintiff's left ventricle and trace tricuspid regurgitation with normal systolic pressure. AR 304, 317-318. No hemodynamically significant pericardial or pleural effusion was present. AR 318.

On August 3, 2012, Dr. Cook observed obvious paraspinous guarding and muscle spasm in Plaintiff's back and prescribed Flexeril (a muscle relaxant). AR 440. Plaintiff was advised to ice and heat the affected areas. AR 440.

On August 6, 2012, I. Ocrant, M.D., a state agency physician, opined Plaintiff could: lift twenty pounds occasionally and ten pounds frequently; stand and/or walk for three hours; sit for six hours; and perform postural activities occasionally. He also found Plaintiff's ability to handle was limited. AR 76-78.

On September 4, 2012, Plaintiff saw Dr. Cash (the orthopeadist) again for an evaluation of both knees, both feet, lower back, and right elbow. AR 452. Dr. Cash examined Plaintiff and observed well-healed incisions in Plaintiff's feet, but they were stiff overall and painful with weight-bearing. AR 452. Plaintiff's knees were fairly flexible, but extension and flexion were limited and there was pain and crepitus, a little worse on the left. AR 452. Plaintiff's left elbow revealed limited range of motion, crepitus and intermittent locking. AR 452. Plaintiff's lower back was tender, his left lower leg was a bit numb in the lateral thigh to soft touch, and he had difficulty sitting throughout the examination because of discomfort. AR 452. Dr. Cash opined Plaintiff met the requirements for a disabled person and encouraged him to appeal his recent failed application for permanent disability. AR 452. Dr. Cash recommended physical therapy for Plaintiff's lower back problems and sciatica and indicated hyaluronic acid injections might be an option for his knees. AR 453.

On September 19, 2012, Plaintiff returned to Dr. Cash for an evaluation of his lower back pain. AR 419. Plaintiff reported more pain when sitting upright or standing for prolonged periods.

AR 419.  Plaintiff stated that he could do most activities around the house but his ability to do yardwork was limited and he is unable to work. AR 419. Up until that time, treatment for Plaintiff's back pain had included chiropractic care, a TENS unit, ultrasound, heating pads and ice packs; he was unable to take normal pain medications. AR 419. Dr. Cash observed that most of the movement in Plaintiff's spine came from his thoracic region and noted significant tightness in the regions of his sacroiliac and lower back. AR 419. Active range of motion in Plaintiff's trunk was flexion to seven degrees, extension to five degrees, and lateral flexion left and right was ten degrees. AR 419.  Dr. Cash's examination further revealed radiculopathy into Plaintiff's left lower extremity down into the lateral aspect of his calf. AR 420. Dr. Cash opined Plaintiff's back impairment caused a forty per cent limitation in his functional activity, including transfers, prolonged standing, ambulating, navigating steps, household activities and work activities. AR 420. Dr. Cash described Plaintiff's back problems as multi-faceted and recommended ultrasound, stretching, and stabilization exercises. AR 420. He also indicated that if Plaintiff made no progress, he would refer Plaintiff for pool therapy.  AR 420.  A discharge note dated November 15, 2012 from physical therapy indicated Plaintiff was a candidate for pool therapy. AR 418.

On November 30, 2012, Dr. Tsai examined Plaintiff and indicated that no changes to his medication would be made. He encouraged a low cholesterol diet and exercise. AR 429.

On March 2, 2013, Alicia V. Blando, M.D., a state agency physician, opined Plaintiff had the same limitations Dr. Ocrant identified. AR 89-91.

On March 14, 2013, Plaintiff presented to Dr. Cook with bilateral foot pain and persistent sacrolliac lower back pain with an acute reinjury. AR 495. X-rays of Plaintiff's lumbosacral spine revealed multilevel degenerative disc disease, greatest at L3-L4, with possible mild lower facet degenerative changes. AR 503.

Dr. Cook referred Plaintiff to a podiatrist for chronic pain in both feet - his right worse than his left. AR 498. On March 27, 2013, David I. Wells, DPM, examined Plaintiff's feet and observed incisions over both feet, bilateral pes cavus foot structure, and residual calcaneovarus deformity, worse on the right. AR 498. The first metatarsal on the right was flexed relative to metatarsals two through five. AR 498. Plaintiff had zero to five degrees of ankle joint

dorsiflexsion and tenderness with palpation of the plantar fascia. AR 498. X-rays of Plaintiff's right foot taken at the appointment showed a bone staple traversing across a completely fused second metatarsal cuneiform joint, significant degenerative changes, and a talar head that articulated with the lateral seventy per cent of the navicular. Based on his examination and review of Plaintiff's x-rays, Dr. Wells diagnosed bilateral plantar fasciitis - worse on the right, degenerative joint disease (DJD) midfoot bilaterally - worse on the right, and status post club foot repair bilaterally. AR 498. Dr. Wells recommended functional orthortics and anti-inflammatory medications, and anticipated Plaintiff would ultimately need joint fusion surgeries. AR 499. He opined that Plaintiff's condition was essentially a residual sequelae of his club foot and subsequent surgical treatment. AR 499.

Plaintiff was seen by Alan Jakubowski, M.D., a pain specialist, on April 8, 2013, after being referred by Dr. Cash. AR 500-501. Plaintiff reported his lower back and foot pain had worsened and he wanted better pain control so he could be more functional. AR 500. He took only acetaminophen (Tylenol) and Flexeril for pain and had been instructed not to take nonsteroidal anti-inflammatory drugs (NSAIDs) because he had developed a severe perforated gastric ulcer prior to his bypass surgery. AR 500; 502. Dr. Jakubowski's examination revealed Plaintiff's gait was slow and deliberate and a sacroiliac (SI) joint compression test was positive AR 501. He elicited with palpation over Plaintiff's bilateral lumbar spinal muscles, lumbar range of motion (ROM) was sixty degrees with flexion and fifteen degrees with extension, grossly intact coordination, and a deficit in light touch and pain sensation in the left and right L5 distribution. AR 501. Dr. Jakubowki, M.D., prescribed Tylenol with codeine but indicated he would consider Vicodin if this was not effective enough. AR 502.

On April 23, 2013, Dr. Cash completed a medical source statement wherein he opined Plaintiff was not able to work full-time at any exertional level and was totally disabled, primarily because of his degenerative low back disease, sacroiliac degenerative joint disease (DJD), bilateral knee DJD, right elbow DJD, obesity and bilateral club feet. AR 478. Dr. Cash indicated his opinion was based on x-ray evaluations of the affected areas and physical examination. AR 478. Dr. Cash estimated Plaintiff could sit less than four hours and stand/walk less than one hour

in an eight-hour day and needed to lie down as needed up to eight hours. AR 478. Dr. Cash also opined Plaintiff could lift less than five pounds occasionally and frequently, could use his hands for reaching four hours in an eight-hour day, could handle for four hours, could feel for eight hours, could push/pull for two hours, and grasp for four hours. AR 479.

On April 26, 2013, Dr. Cash noted Plaintiff had lost thirty pounds over the previous several months but was still morbidly obese. AR 497. His examination revealed Plaintiff had limited knee flexion-extension, limited elbow flexion-extension, limited ambulatory ability and his distal neurovascular was otherwise intact. AR 497. Dr. Cash recommended water aerobics, hyaluronic acid injection in Plaintiff's left knee, injection under fluoroscopy in his right sacroiliac joint, and pain management with Dr. Jakubowski. AR 497.

On May 9, 2013, Dr. Cash administered an injection in Plaintiff's left knee of Synvics-One. AR 543. Plaintiff also saw Dr. Cook on May 9, 2013, who added Phentermine (diet pills) and Wellbutrin (anti-depressant) to Plaintiff's medications. AR 488.

On May 29, 2013, Dr. Tsai also opined Plaintiff was unable to work full-time even at the sedentary exertional level. AR 480. Dr. Tsai indicated Plaintiff's primary impairments were chronic persistent atrial fibrillation, obesity, severe osteoarthritis in his back, hips and knees, and sleep apnea. AR 480. He opined that Plaintiff would be able to sit for seven to eight hours over an eight hour period and would be able to stand or walk for five to ten minutes. AR 480.

On May 30, 2013, Douglas Tait, M.D., administered a fluoroscopic injection in Plaintiff's inferior and superior sacroiliac joints bilaterally. AR 545.

On June 6, 2013, Dr. Cook noted Plaintiff's cardiologist had prescribed Eliquis, a cardiac prophylaxis, and that Plaintiff was currently losing about a pound a week on the South Beach diet and weighed 267 pounds. AR 485-86.

On June 24, 2013, Dr. Cash commented that Plaintiff's right knee was doing fairly well and his symptoms were static after receiving the lumbar epidural injection. AR 544. Dr. Cash opined Plaintiff's pain symptoms were a bit improved, but he remained completely disabled overall. AR 544. On August 13, 2013, Plaintiff admitted to being noncompliant with his diet while visiting his daughter in Santa Cruz and weighed 274 pounds. AR 482.

Plaintiff saw Dr. Cash again on August 26, 2013 for an evaluation of his back, knees, and elbow. Everything was stable except that his low back strain was causing him discomfort. Sensation was grossly intact throughout both his upper and lower extremities. Dr. Cash recommended physical therapy for low back exercises with core strengthening, medication when needed, and activity modification. AR 546.

Plaintiff was seen for scheduled monitoring by Dr. Cook in September and October 2013. On October 10, 2013, he was moving all of his extremities and had a nonantalgic gait, and appeared stable. AR 553-554; 566; 569. During both visits he had a regular heart rate and rhythm, no murmurs, rubs, or gallops were noted. AR 553; 555; 566; 569. He was advised to continue therapeutics at present dosages. AR 553; 555.

On October 15, 2013, Plaintiff saw Dr. Cash for a routine orthopedic evaluation. He reported going to Disneyland where he had experienced significant difficulty with mobility. Dr. Cash recommended another epidural injection in Plaintiff's lumbar spine and a repeat hyaluronic acid injection in his knees, as he "had significant relief of symptoms with this in the past." AR 547. All other blood work was normal. AR 548-551.

## V.     THE DISABILITY DETERMINATION PROCESS

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §

404.1520(a). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. § 404.1520(a)(4). The ALJ must consider objective medical evidence and opinion testimony. 20 C.F.R. § 404.1513.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability; (2) whether the claimant had medically-determinable "severe" impairments; (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work; and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the regional and national level. 20 C.F.R. § 404.1520(a)(4).

## VI. SUMMARY OF THE ALJ'S FINDINGS

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 20-29. At step one, he found that Plaintiff met the insured status requirements through December 31, 2016, and that he had not engaged in substantial gainful activity since April 18, 2012, the alleged onset date. AR 14. At step two, the ALJ identified osteoarthritis of the knees, degenerative disc disease of the lumbar spine, degenerative changes of the right elbow, sleep apnea, and obesity as severe impairments. However, he found Plaintiff's cardiac condition was nonsevere. AR 14-15. At step three, the ALJ determined that the severity of Plaintiff's impairments did not meet or exceed any of the listed impairments. AR 15.

Based on a review of the entire record, the ALJ determined that Plaintiff had the RFC to perform less than a full range of sedentary work as defined in 20 CFR § 404.1567 (a). Specifically, the ALJ found Plaintiff could: frequently push and pull bilaterally with his upper extremities; frequently operate foot controls bilaterally with his lower extremities; occasionally climb ramps and stairs; occasionally balance, stoop, kneel, crouch, and crawl; and frequently reach and handle with his right upper extremity. However, he was precluded from climbing ladders, ropes, and scaffolds; and he should avoid concentrated exposure to extreme cold, hazardous machinery and unprotected heights. AR 15-20. Given these limitations, the ALJ

determined that Plaintiff could perform his past work as a contract clerk and an office manager. AR 20-21.

**VII. STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether: (1) it is supported by substantial evidence; and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id.*

**VIII. DISCUSSION**

**A. The ALJ Improperly Evaluated the Medical Evidence.**

Plaintiff contends that that ALJ's evaluation of the medical evidence is not supported by substantial evidence. He alleges that the ALJ improperly rejected Plaintiff's treating physicians' opinions (who were specialists in their fields) and instead relied upon agency non-examining physicians' opinions who had not evaluated all of the medical records. Moreover, he argues that the ALJ selectively relied on evidence in the medical record that supported his decision and ignored other relevant findings. As a result, the ALJ failed to provide specific and legitimate reasons for rejecting Plaintiff's treating physicians' opinions. (Doc. 14; pgs. 16-21; Doc. 20, pgs. 1-4). Defendant argues that the ALJ properly evaluated the medical evidence and the reasons for rejecting Plaintiff's treating physicians' were specific and legitimate and are supported by substantial evidence in the record. (Doc. 17, 6-16).

When reviewing the Plaintiff's doctors' opinions the ALJ stated the following:

> Charles Tsai, M.D., a Treating Physician (TP) submitted a Medical Source Statement (MSS) dated May 2013. Dr. Tsai opined that claimant is precluded from performing any full-time work at any exertional level; can sit up to eight hours in an eight hour [day];

11

and can stand and walk less than one hour in an eight hour workday. Douglas Roberts, D.C., a treating chiropractor, submitted a statement dated July 2011 and opined that the claimant is unable to perform any work duties "that will lead to gainful employment." Finally, Robert Cash, a Treating Physician, submitted a Medical Sources Statement (MSS) dated April 2013. Dr. Cash opined the claimant can sit less than four hours in and eight-hour workday; stand and walk less than one hour in an eight hour workday; lift less than five pounds occasionally; reach handle and grasp up to four hours in an eight-hour workday; push and pull up to two hours in an eight-hour workday; and must intermittently lie down throughout the workday. Dr. Cash further opined the claimant fits the requirement of a disabled person and is completely disabled overall. In sum, Dr. Tsai, Roberts and Cash opined that the claimant is not capable of full-time employment and Dr. Tsai and Cash opined that the claimant is limited to a substantially reduced range of sedentary exertion. The undersigned gives little weight to the opinions of Drs. Tsai, Roberts, and Cash because they are overly restrictive given the claimant's positive response to injection therapy, conservative treatment throughout the relevant period and good daily activities. Moreover, their opinions are inconsistent with treatment notes documenting predominantly normal gait, full strength, minimally reduced sensation in his left lower extremity, and intermittently positive straight leg raising tests.

At the request of this agency, I. Ocrant, M.D. and Alicia Blando, M.D. reviewed the claimant's medical record and submitted Physical Residual Functional Capacity (PRFC) Assessment forms dated August 2012 and March 2013, respectively. Drs. Ocrant and Blando opined the claimant can lift and carry twenty-pounds occasionally and ten pounds frequently; stand and walk three hours in an eight-hour workday; sit about six hours in and eight hour work day; occasionally balance, stoop, kneel, crawl, and climb ramps and stairs; never climb ladders, ropes or scaffolds; frequently perform light handling with his right upper extremity; and avoid concentrated exposure to extreme cold and hazards. The undersigned gives slightly reduced weight to their opinions regarding claimant's ability to lift and carry because it is inconsistent with image studies showing degenerative changes in the right elbow. Accordingly, the undersigned finds that the claimant can lift and carry no more than sedentary weights. The undersigned gives significant weight to their remaining opinions because they are consistent with the claimant's normal gait, good activities of daily living, positive response to injection therapy, positive response to epidural steroid injection, and conservative treatment throughout the relevant period.

In sum, the above residual capacity assessment is supported by the weight of the medical evidence and the opinions of Drs. Ocrant and Blando …

AR 19-20 (Citations omitted).

The ALJ then found Plaintiff could perform sedentary work with various postural

limitations previously described.[4] In doing so, the ALJ accurately summarized Plaintiff's medical history (AR 14; 16-18) but as noted above, determined Dr. Cash, Dr. Tsai, and Dr. Robert's[5] opinions were entitled to little weight because they were overly restrictive based on Plaintiff's conservative treatment which entailed taking medication, his positive response to injection therapy, and his "good" activities of daily living. AR 19-20. He also found all three opinions were inconsistent with their treatment notes which the ALJ opined documented predominantly normal gait, full strength, minimally reduced sensation in his left lower extremity and intermittently positive straight leg tests. AR 19. The Court finds the ALJ's reasoning problematic for several reasons.

First, because Drs. Tsai and Cash were Plaintiff's treating physicians, the ALJ was required to provide specific and legitimate reasons for rejecting each doctor's opinion. *Ghanim v. Colvin*, 763 F. 3d 1154, 1161 (9th Cir. 2014) (the ALJ must give specific and legitimate reasons that are supported by substantial evidence for rejecting a controverted treating physician's opinion). Here, the ALJ gave the same reasons for rejecting all of the medical opinions which was not specific to each of the doctor's findings.

Furthermore, in rejecting these doctors' findings, the ALJ gave the greatest weight to Drs. Ocrant and Blanco, two non-examining physicians' opinions. Defendant correctly notes that an

---

[4] The entirety of the ALJ's discussion of Drs. Ocrant and Blando's opinion and his subsequent RFC determination is as follows:

> Based on the exam findings documenting normal gait, obese body habitus, reduced lumbar range of motion and positive sacroiliac compression test, he is limited to sedentary exertion and only occasional balancing, stooping, crouching, and climbing ramps and stairs. Based on the claimant's minimally decreased sensation in his left thigh in conjunction with his ability to drive a car, the undersigned finds that the claimant is limited to frequent operation of foot controls, precluded from climbing ropes and scaffolds, and must avoid concentrated exposure to hazardous machinery and unprotected heights. In light of the claimant's conservative treatment and right elbow impairment with clinical exams showing limited range of motion and intermittent locking, he is limited to jobs requiring frequent pushing and pulling with his upper extremities and frequent reaching and handling with his right upper extremity. AR 20.

[5] Although the ALJ refers to chiropractor Douglas Roberts as Dr. Roberts, he is not a licensed physician and is not an acceptable medical source. 20 CFR § 404.1513 (a) (1). As a chiropractor, however, he is an "other medical source" and his opinions may be considered as part of the disability determination process. 20 CFR § 404.1513 (d) (1).

ALJ may rely on the opinions of non-examining medical experts and may consider them in the context of the whole record. *See*, *Thomas v. Barnhart*, 278 F. 3d 947, 957 (9th Cir. 2002) ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.); *Matney v. Sullivan*, 981 F. 2d 1016, 1019 (9th Cir. 1992) (The ALJ need not accept the opinion of any physician, including a treating physician, if the opinion is brief, conclusory, and inadequately supported by clinical findings.) (Doc. 17, pgs.9-10). However, the opinion of a non-examining physician "cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining or a treating physician." *Lester v. Chater*, 81 F. 3d 821, 831 (9th Cir. 1995).

In this case, reliance on the non-examining physicians' opinions was not legitimate as they did not have an opportunity to review large portions of the Plaintiff's medical record which related to treatment Plaintiff received after these doctors made their assessments. These medical records include x-rays of Plaintiff's lumbosacral spine taken on March 15, 2013 which revealed multilevel degenerative disease (AR 503) and an x-ray of Plaintiff's right foot taken on March 27, 2013, by podiatrist Dr. Wells, which revealed a bone staple traversing across a completely fused metatarsal joint, as well as other significant degenerative changes throughout his foot.[6] AR 498-499. The non-examining doctors also did not consider: (1) Dr. Well's notes (AR 498-499); (2) Dr. Tsai's medical source statement (AR 480); (3) Dr. Cash's subsequent examinations (AR 497; 543; 544; 546), his medical source statement (AR 478-479) and his referral to Dr. Jakubowski, a pain specialist (AR 478-479); nor (4) Dr. Jakubowski's own evaluation and recommendations. AR 500-502.

The Court is aware that the RFC is not a medical opinion, but a legal decision that is expressly reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining RFC). "It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional

---

[6] As previously noted, Dr. Ocrant rendered his opinion on August 6, 2012 (AR 76-78), and Dr. Blando rendered her assessment on March 2, 2013. AR 89-91.

capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).   However, an ALJ is not allowed to use his own medical judgment in lieu of that of a medical expert. *See Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (As a lay person, the ALJ is "not at liberty to ignore medical evidence or substitute his own views for uncontroverted medical opinion"; he is "simply not qualified to interpret raw medical data in functional terms."); *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("[T]he ALJ cannot arbitrarily substitute his own judgment for competent medical opinion . . . ." (citations and quotation marks omitted)); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) (the ALJ "must not succumb to the temptation to play doctor and make [his] own independent medical findings."); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985) (the ALJ may not substitute his interpretation of laboratory reports for that of a physician).  This is especially true when evaluating the opinions of treating physicians and specialists whose opinions are entitled to deference. 20 C.F.R. § 404.1527(c)(2) (Generally, more weight is given to treating physicians and specialists about medical issues related to his or her specialty area); *See*, *Benecke v. Barnhart*, 379 F. 3d 587, 592 (9th Cir. 2004) (treating physician's opinion is afforded more weight than that of a non-examining reviewing or consulting physician); *Holohan v. CSS*, 246 F. 3d 1195, 1202-1203 n. 2 (9th Cir. 2001) (specialty of medical source is relevant when weighing opinions).  In this instance, because the ALJ rejected the treating physicians' and the chiropractor's opinions, he independently interpreted these most recent medical records (AR16-20) and devised a sedentary RFC without crediting a medical expert who reviewed all of the medical evidence. This was error.

      Notwithstanding the above, the Court notes that the ALJ attempted to thoroughly explain his reasoning for each of the proposed limitations and raised concerns regarding Plaintiff's conditions.  These concerns include Plaintiff's conservative treatment which entailed using ice and heat to treat sore areas (AR16; 328; 419; 440); the recommended use of muscle relaxers, analagesic medications, over the counter medications, and orthotics to treat disabling back, knee, and foot pain (AR16, 499; 501-502); Plaintiff's positive response to steroid injections and injection therapy (AR 17; 278; 488; 545; 547); his failure to follow through on the recommended surgery for his elbow (AR17; 279); his non-compliance with treatment recommendations

including his diet and exercise (AR 18; 452; 482; 483;488; 391); and his ability to perform activities of daily living including performing chores, driving, and traveling.[7] AR 16-19; 387 (chopping firewood); AR 419 (Plaintiff could perform housework but not yardwork); AR 481-482 (traveling to Santa Cruz); AR 547 (travel to Disneyland); AR 483; 487; 489; 491 (reported enjoys traveling, walking, and camping). However, given the lack of a review of the entire medical record by a physician after the opinions of Plaintiff's treating physicians were rejected, the Court is unable to affirm the ALJ's decision.

## IX.     REMAND FOR FURTHER ADMINSTRATIVE PROCEEDINGS

The Court must determine whether this action should be remanded to the Commissioner with instructions to immediately award benefits, or whether this action should be remanded to this Commissioner for further administrative proceedings. Remand for further proceedings is appropriate when an evaluation of the record as a whole creates serious doubt as to whether the claimant is in fact disabled. *Garrison v. Colvin*, 759 F. 3d 995, 1021 (9th Cir. 2014). Conversely, a court should remand with for an award of benefits when: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Id*. at 1020. Even if all three of these criteria are met, the Court can retain flexibility in determining an appropriate remedy. *Brown-Hunter v. Colvin*, 806 F. 3d 487, 495 (9th Cir. 2015).

Here, the ALJ's errors and his concerns that Plaintiff is not disabled, require that the case be remanded for the ALJ to properly consider and discuss the treating physicians' opinions. If upon review of the current record the ALJ concludes that the Plaintiff may not be disabled, further medical evaluation is necessary. It is recommended that any such evaluation be performed by specialists given that Plaintiff's doctors are also specialists. Any subsequent

---

[7] It is noted however, that Plaintiff's ability to take some pain medications was limited due to his history of ulcers. AR 60-62; 190; 419; 500; 502. Additionally, Dr. Cash opined that Plaintiff's functional ability to perform some daily activities was limited to forty percent, and that even though he responded well to injection therapy, he was still disabled overall. AR 420; 544.

decision shall discuss what weight is assigned to each physician's opinion, the reasons for making such a determination, and why substantial evidence supports that conclusion. The ALJ should then formulate a RFC that encompasses any limitations and/or opinions that are supported by substantial evidence.

Importantly, the court expresses no opinion regarding how the evidence should ultimately be weighed, and any ambiguities or inconsistencies resolved on remand. The Court also does not instruct the ALJ to credit any particular opinion or testimony provided that the ALJ's determination complies with applicable legal standards, is clearly articulated via appropriate reasoning provided in the decision, and is supported by substantial evidence in the record. Conversely, the ALJ may ultimately find plaintiff disabled during the appropriate period.

Because the Court remands this case for renewed consideration of the medical evidence, the Court dispenses with an exhaustive analysis of the other issues raised in Plaintiff's brief. The ALJ's findings at step two, his evaluations of Plaintiff's credibility, and his consideration of Plaintiff's wife testimony are inescapably linked to conclusions regarding the medical evidence. As such, re-evaluation of the medical evidence may impact the ALJ's findings in these areas. Therefore, it cannot be adequately determined at this time whether the ALJ's decisions regarding those other areas at issue were proper and supported by substantial evidence. On remand, the ALJ will have an opportunity to further consider these issues, and address the medical evidence and non-medical testimony in context of the record as a whole. The ALJ will also be free to reevaluate his analysis and/or further develop the record with respect to any or all of these additional issues.

///
///
///
///
///
///
///

## X.  CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is not based on proper legal standards. Accordingly, this Court GRANTS Plaintiff's appeal against the Commissioner of Social Security IN PART, and DENIES the Commissioner's cross-motion for summary judgment. This action is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion. The Clerk of this Court shall enter judgment in favor of Plaintiff, Perry Howard Vaughn , and against Nancy A. Berryhill, Commissioner of Social Security. The Clerk of the Court is directed to close this action.

IT IS SO ORDERED.

Dated:  **March 17, 2017**              /s/ Gary S. Austin
                                UNITED STATES MAGISTRATE JUDGE